THE PEOPLE OF THE STATE OF NEW YORK ex rel. NICHOLAS SAIA, Appellant, against WALTER B. MARTIN, as Warden of Clinton Prison, Respondent.

Argued October 9, 1942; decided January 21, 1943.

*Adolph M. Newman* for appellant. Section 293 of the Correction Law (Cons. Laws, ch. 43) is unconstitutional in that it denies a person due process of law. (*People* v. *Henriques & Co.*, 267 N. Y. 398; *Matter of Naylor*, 284 N. Y. 188; *Hovey* v. *Elliott*, 167 U. S. 409; *People ex rel. Morriale* v. *Branham*, 36 N. Y. S. (2d) 217; *People ex rel. Moss* v. *Brophy*, 247 App. Div. 859.) Section 293 of the statute is unconstitutional in that it encroaches upon the judicial department of the State. (*People ex rel. Burby* v. *Howland*, 155 N. Y. 270.) The order of affirmance is based upon an incorrect reading of section 293 and should be reversed.

*John J. Bennett, Jr., Attorney-General* (*Harry P. Kehoe* and *Patrick H. Clune* of counsel), for respondent. Section 293 of the Correction Law is not unconstitutional. (*People ex rel. Stephani* v. *North*, 91 Misc. 616; *People ex rel. Coppola* v. *Brophy*, 254 App. Div. 641; 280 N. Y. 778.)

LEWIS, J. The appellant, when twenty years of age, pleaded guilty in Supreme Court, Erie County, to the crime of robbery second degree. He was sentenced to be " imprisoned at hard labor in the Elmira Reformatory * * * until discharged according to law." While he was serving that sentence the Commissioner of Correction, assuming to act under authority conferred upon him by section 293 of the Correction Law (Cons. Laws, ch. 43), made an order by which the appellant was transferred from Elmira Reformatory to Clinton Prison at Dannemora where the warden was ordered to receive and detain him " as directed by law."

In this *habeas corpus* proceeding the appellant, invoking the " due process " clause of the Federal Constitution (Amendment XIV, § 1) and of the Constitution of New York (art. 1, § 6), asserts that in the circumstances presently to be considered the order transferring him from Elmira Reformatory to a State prison, which purports to have been made under section 293 of the Correction Law (as amd. by L. 1931, ch. 455), is void. The Appellate Division has unanimously affirmed the order of Special Term dismissing the writ of *habeas corpus*. The proceeding is here upon appeal by the appellant as of right upon the ground that a constitutional question is involved.

Since 1881 the Legislature has prescribed that when a person is convicted of a crime —" The place of the imprisonment must be specified in the judgment and sentence of the court. But convicts may be removed from one place of confinement to another, in a case, and by the authority, designated by statute." (L. 1881, ch. 676 [Penal Code, § 705]; now Penal Law, § 2180.)

If we trace the history of statutory provisions which have governed transfers of convicts from Elmira Reformatory to State prisons, we find that prior to the present statutes, section 296 of the Correction Law (repealed by L. 1931, ch. 455) provided that in the event the Board of Managers of the Reformatory found that the institution was overcrowded, or that a prisoner therein was more than thirty years of age or had been previously convicted of a felony, or was incorrigible and that his presence there was seriously detrimental to the welfare of the institution, the Board might apply to a Justice of the Supreme Court for an order transferring him to a State prison. Under that former statute the petition for

such an order, signed by the Board of Managers of the Reformatory, was required to state " the causes for seeking such transfer " and it was further required that " notice of such application * * * shall be served * * * at least eight days before *the hearing* on the superintendent of state prisons." The earlier statute also empowered the Justice of the Supreme Court to whom application was made to " grant such order of transfer, *on such hearing as he may prescribe if it appears to his satisfaction that the facts alleged are true and that such transfer should be made.*" (Emphasis supplied.)

By the enactment of Laws of 1931, chapter 455, the former sections of the Correction Law which dealt with reformatories were repealed, including section 296 mentioned above. In their place a new Article 12 was substituted which was divided into three parts, one of which contains those provisions which have special application to Elmira Reformatory. By the new section 293 the procedure by which a transfer from Elmira Reformatory to a State prison had formerly been accomplished was changed by eliminating the requirement of an order of a Justice of the Supreme Court and substituting an order by the Commissioner of Correction. Section 293 (effective April 16, 1931) provides as follows:

" § 293. *Transfer of prisoners from Elmira reformatory to state prisons.* If it shall appear to the satisfaction of the commissioner of correction that Elmira reformatory is over-crowded or that any prisoner confined in such reformatory:

" 1. Was, at the time of his conviction, more than thirty years of age; or

" 2. Has been previously convicted of a felony; or

" 3. While in the reformatory, is incorrigible and that his presence therein is seriously detrimental to the welfare of the institution; the commissioner, by order, may cause the prisoner or prisoners named therein to be transferred to a state prison specified by him. A prisoner so transferred shall be confined in such prison as under an indeterminate sentence, commencing with his imprisonment in the reformatory with a minimum of one year and a maximum fixed by law for the crime of which the prisoner was convicted and sentenced; and may be released on parole or absolutely discharged as are other prisoners confined under an indeterminate sentence. Such prisoner may be returned at any time to the reformatory in the discretion of such commissioner."

When, following the present appellant's conviction, a judicial officer, in the exercise of his discretion, imposed a sentence which specified Elmira Reformatory as the place of imprisonment, the appellant was thereby placed under that type of detention recognized by statute as peculiar to a reformatory — a type of penal discipline which is designed " to accomplish [the prisoner's] reformation." (Correction Law, § 277; and see §§ 295, 296.) We may assume that the appellant's sentence to a reformatory was to make effective the purpose of the committing justice to afford the appellant the benefit of those corrective measures which the Legislature in its wisdom has chosen as means by which young men who are not hardened criminals but who have been subjected to subversive influences and have given evidence of weakened moral sense, may be taught how to make an honest living and thus " tend to accomplish their reformation." (Correction Law, § 277.)

In furtherance of that public policy the Legislature has provided that an inmate of Elmira Reformatory, as was the appellant, cannot be transferred to a State prison unless it shall appear to the satisfaction of the Commissioner of Correction that one or more of the conditions exist which are expressly set forth in section 293 quoted in full above.

However, the record before us fails to show that as a basis for the order transferring the appellant to Clinton Prison, there was evidence before the Commissioner of Correction of any one of the facts required by section 293. The only evidence of the causes which prompted the appellant's transfer is to be found in the following written statement which accompanied the order made by the Commissioner of Correction:

" # 42378 Nicholas Saia. He was returned for violation of parole and has been held for five years. He comes from a bad family and the authorities have information that they have their chain of houses of prostitution. Although he is married, he was receiving visits for awhile from a girl, who was posing as his wife with whom he lived while on parole. His family, also, advised the Elmira authorities that this girl was Saia's wife. He is inclined to be a ' Big Shot ' among the Italian inmates. He is not considered a suitable case for Elmira Reformatory."

We find nothing in the above statement which satisfies the statutory requirements for the order by which the appellant was transferred from a reformatory to the State prison at Dannemora. There is nothing of record in this proceeding which shows, within the requirements of section 293, that on the date of the order directing the appellant's transfer Elmira Reformatory was overcrowded; that the appellant was over thirty years of age; that he had previously been convicted of a felony; that he was incorrigible or that his presence in Elmira Reformatory was seriously detrimental to the welfare of that institution. On the contrary, the hearsay statement, quoted above, that the appellant " comes from a bad family and the authorities have information that they have their chain of houses of prostitution," is controverted by the sworn statement by the appellant's father, which stands uncontradicted — " that at no time during the life of your deponent or any members of his family has he owned, operated, managed or maintained or had anything to do with a house of prostitution, houses of prostitution, or chain of houses of prostitution." Nor do we think the statement of alleged fact, given as a basis for the transfer, that " He [the appellant] is inclined to be a ' Big Shot ' among the Italian inmates," affords support for the drastic order which is now challenged.

The record also makes it clear that the appellant's transfer from a reformatory to a State prison was ordered by the Commissioner of Correction without affording the appellant an opportunity to be heard upon the written charges annexed to the order, which charges, on their face, do not meet the requirements of section 293 of the Correction Law. Indeed, it appears by an affidavit filed by the appellant that as to those charges he was prepared to give evidence which, if believed, would tend to prove their falsity.

Without passing upon the constitutionality of section 293 of the Correction Law, we are to determine whether in this instance section 293 was administered in accordance with its terms and in a manner which accorded to the appellant due process of law within the constitutional guarantees to which he was entitled. The precise question is whether in this *habeas corpus* proceeding the appellant may challenge the validity of the order by which he was transferred from Elmira Reformatory to Clinton Prison at Dannemora, where it appears that the order was based upon facts which do not meet the requirements of section 293 and there is no evidence

that one or more of the statutory conditions prerequisite to such an order have been fulfilled.

Concededly the Commissioner of Correction was without power to make the order in question except by that limited authority which the Legislature has granted by section 293. In view of the failure by the Commissioner to present proof in the present proceeding that prior to the order now challenged there existed at Elmira Reformatory one or more of the conditions specified in section 293, we think the order here in question is void. It follows that the transfer which was made thereunder, served to deprive the appellant of his right, under his original sentence, to that type of penal servitude which, as we have seen, was made available by the Legislature at Elmira Reformatory and which, we may assume, was designated by the committing justice, in the exercise of judicial discretion, as appropriate for the appellant. The enforcement of the void order, by which he was transferred from Elmira Reformatory to Clinton Prison at Dannemora, placed additional restraint upon the appellant's liberty without sanction of law. In the circumstances disclosed by this record, it was a deprivation of liberty in violation of the appellant's right to due process of law guaranteed to him by the Constitution.

Our conclusion being that the appellant is now detained at Clinton Prison under a void order, which has been administered in violation of his constitutional rights, the remedy of *habeas corpus* is available to him. (Civ. Pr. Act, § 1230; and see *Hoff* v. *State of New York*, 279 N. Y. 490, 492, 493; *People ex rel. Carr* v. *Martin*, 286 N. Y. 27, 31; *Hans Nielsen, Petitioner*, 131 U. S. 176, 182; *Bowen* v. *Johnston*, 306 U. S. 19, 24.) Under the rule prevailing in this jurisdiction the fact that the appellant is still under a legal commitment to Elmira Reformatory does not prevent him from invoking the remedy of *habeas corpus* as a means of avoiding the further enforcement of the order challenged. (*People ex rel. Coppola* v. *Brophy*, 280 N. Y. 778; *People ex rel. Markov* v. *Brophy*, 284 N. Y. 323; *People ex rel. Bai* v. *Brophy*, 286 N. Y. 585.)

The orders should be reversed and the relator remanded to the custody of the Superintendent at Elmira Reformatory.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.