Burke, J.
The appellant, a prisoner, validly incarcerated in one prison, seeks a writ of habeas corpus in connection with an allegedly invalid transfer to a State hospital for the insane maintained at another penal institution.
Appellant was sentenced in October of 1952, upon a plea of guilty to rape in the first degree, to hard labor at Attica State Prison for the indeterminate sentence of one day to life. The sentence was presumably imposed subsequent to a psychiatric examination and the submission to the court of a report thereof in accordance with section 2189-a of the Penal Law.
In May of 1957 appellant was transferred to Dannemora State Hospital, an institution maintained for the purpose of confining and caring ‘ ‘ for such male prisoners as are declared insane ” (Correction Law, § 375). Appellant thereafter applied for a writ of habeas corpus upon the ground, inter alia, that he, being sane, was illegally transferred. He does not challenge on this issue the validity of the original commitment to Attica State Prison but merely protests his removal to Dannemora State Hospital.
The Appellate Division, ignoring the issue of sanity, upheld the denial of the writ solely upon the ground that the place of confinement may not be challenged by habeas corpus. ‘ ‘ Once a valid commitment is made ’ ’, they said, ‘ ‘ the place of detention is an administrative matter not subject to court intervention ” (citing People ex rel. Sacconanno v. Shaw, 4 A D 2d 817).
Although under ordinary circumstances a mere transfer (as distinguished from a commitment for insanity) is purely an administrative matter, and a prisoner has no standing to choose the place in which he is to be confined, we do not feel that the courts should sanction, without question, removals, in cases of alleged insane prisoners, which can conceivably be uncontrolled and arbitrary.
The issue here is not whether appellant is insane, but whether the courts below may properly refuse to even inquire into the nature of his condition and the possibility that he may be ille *485 gaily confined with deranged persons who are liable to harm and/or adversely affect him.
In spite of the fact that it is well settled that one may not by means of a writ of habeas corpus challenge imprisonment or restraint ‘ ‘ by virtue of the final judgment * * * of a competent tribunal of * * * criminal jurisdiction ” (Civ. Prae. Act, §§ 1231, 1230), it seems quite obvious that any further restraint in excess of that permitted by the judgment or constitutional guarantees should be subject to inquiry. An individual, once validly convicted and placed under the jurisdiction of the Department of Correction (Correction Law, § 6), is not to be divested of all rights and unalterably abandoned and forgotten by the remainder of society. If these situations were placed without the ambit of the writ’s protection, we would thereby encourage the unrestricted, arbitrary and unlawful treatment of prisoners, and eventually discourage prisoners from co-operating in their rehabilitation.
Since the writ of habeas corpus has traditionally been relied upon to alleviate the oppression of unlawful imprisonment and abuses of similar character, it can be invoked to obtain a hearing to test the validity of a commitment in an institution for the criminally insane. We cannot merely by virtue of the valid judgment sanction the subsequent abrogation of lawful process.
The State’s right to detain a prisoner is entitled to no greater application than its correlative duty to protect him from unlawful and onerous treatment (Ann. 155 A. L. E. 145, 146), mental or physical. “ [R]elief other than that of absolute discharge ” should be forthcoming (see Matter of Albori, 218 Cal. 34, 37; 39 C. J. S., Habeas Corpus, § 9, p. 440; Ann. 155 A. L. E. 145, 146; Matter of Rider, 50 Cal. App. 797; Matter of Byrnes, 26 Cal. 2d 824).
To implement this duty and secure the relief due the prisoner, we can and should recognize that “ [Cjourts have always asserted and exercised authority which, though perhaps not expressly established by statute, is ‘ based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution.’ ” (People v. Gersewitz, 294 N. Y. 163, 167; People ex rel. Saia v. Martin, 289 N. Y. 471.)
*486 In this light the refusal of the Appellate Division to inquire into the challenged detention is erroneous. Its ultimate reliance upon People ex rel. Morriale v. Branham (291 N. Y. 312, 318) cited in the Sacconanno case (supra) is misplaced. In the Morriale case we did not intend to abolish the time-honored method of challenging an unlawful commitment. Here it would not accord with the equitable administration of justice. Therefore, even if constitutional questions (in our view) are not presented,* a denial of a writ, thereby precluding a hearing to test sanity, would be egregious.
Although the availability of the writ of habeas corpus for this purpose may be a source of administrative inconvenience, it is not justification for a denial. It is well here to repeat that “ the rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected.” (People v. Gitlow, 234 N. Y. 132, 158.)
Accordingly, the order of the Appellate Division should be reversed and the matter remitted to Special Term for further proceedings not inconsistent with this opinion.
Chief Judge Desmond and Judges Dye, Fuld, Froessel and Van Voorhis concur; Judge Foster taking no part.
Order reversed, etc.

 However, see N. Y. Const., art I, § 5; People ex rel. Cirrone v. Hoffmann, 255 App. Div. 404, 407; also compare Correction Law, § 383 (transfer of insane malo prisoners) with Correction Law, § 408 (insane female prisoners).