John H. Doerr, J.
Petitioners, both inmates at the Attica Correctional Facility, commenced this proceeding pursuant to CPLR article .78 to secure an order returning them to the custody and rehabilitative care of the Albion Community Preparation Center where they had previously been incarcerated.
Both petitioners had originally been sentenced pursuant to article 75 of the Penal Law and the main thrust of their argument is that the Attica confinement is at variance with the intent -and purpose of their imprisonment in the first instance.
They ’also contend that the adjustment hearings and determinations which resulted in their transfers from Albion to Attica did not afford them due process of law.
This court, by its decision of January 28,1974 treated in detail and depth the background and history of each petitioner and their respective claims, and no useful purpose will be served by a rerecitation of that information and those findings at this time.
It is sufficient to point out that on the basis of the petition presented it was not possible for this court to make a determina *487 tion that Attica is the type of rehabilitative institution which offers the programs and facilities envisioned by the sentencing courts as desirable, necessary and beneficial to petitioners when they were sentenced to reformatory terms pursuant to article 75 of the Penal Law.
Consequently a hearing was ordered on all the issues presented by petitioners and that proceeding has been held and concluded.
Since the January 28, 1974 decision directed such hearing, the question of whether or not petitioners were entitled to or afforded a due process hearing on the subject matter of their transfers from Albion to Attica was not reached or decided, but that matter has now been thoroughly presented for review.
Two questions are presented relating to these petitioners.
Is Attica the type of institution where petitioners should be confined in fulfillment of the judgments rendered against them, and were the adjustment hearings and determinations which resulted in their removal from Albion to Attica legally sufficient?
In disposing of the former question: “ [I]t is important to remember that the purpose of a reformatory sentence is to provide education, moral guidance and vocational training for young offenders who are badly in need of such instruction and / counsel.” (Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 75.10, p. 156.)
I find that the Attica Correctional Facility does not meet even those stated minimal criteria, and that it is improper for these petitioners to be there incarcerated. Attica is clearly not the type of rehabilitation center envisioned by the courts that sentenced the.se petitioners and it was certainly never intended that the judgments against them be satisfied by imprisonments in Attica.
Prior to the instant petition, both petitioners had sought relief from their Attica confinement by way of habeas corpus to the .Wyoming County Court, the county where Attica is located. Although that court dismissed those proceedings, the county Judge at the Irvmg hearing thereon, took judicial notice that Attica is not a rehabilitative institution.
I find that determination to be accurate- on careful review and consideration of all the proof presented at the hearing.
In People v. Jiminez (71 Misc 2d 867, 869) the defendants correctly claimed they received a reformatory sentence in order to make them available to certain rehabilitation procedures. The court held that: “ Any change in the place of imprison *488 ment which serves' to, deprive the prisoner of his right to that type of incarceration deemed to he appropriate by the sentencing Judge is void. Enforcement of this void administrative act constitutes a deprivation of due process (People ex rel. Saia v. Martin, 289 N. Y. 471).”
Pointing out that (p. 869) “the nature of the sentence is not controlled by the place of confinement”, the court in Jiminez (supra) concluded that (p. 869) “Regardless of the institution in which the sentence is served, its purpose must be fulfilled.”
I agree and find that the purpose of the sentences imposed on petitioners is not fulfilled at Attica.
It has been held that a reformatory-term inmate does not have to be confined in a reformatory, but there must be consistency between the treatment that is given and the sentence. “ If such treatment is not available at a prison, the inmate must be transferred to an institution at which it is available or he must be released.” (People ex rel. Batista v. Zelker, 39 A D 2d 343, 346.)
At the time of their transfers to Attica, petitioners were on the verge of being released. Albion is. a type of halfway house serving correctional needs for prisoners not requiring other confinement. For petitioners it was an institution closer to their homes and they were progressing nicely toward the goal of return to society as useful citizens. Punishment by sending them to Attica in the manner and for the reasons given was as unfortunate as it was unfair and amounted to a step in the opposite direction. Transfer to a maximum security facility was a form of retribution that did not comport with the original purpose of petitioner’s sentences, and in these cases on the facts presented was improper.
In other situations this may not be so but each case must be decided on its relative merits or demerits and determined on an ad hoc basis.
The incongruity here is obvious when the situation concerning petitioner Wehling is considered. On March 26, 1970 this young man, on a misdemeanor plea, was adjudged a youthful offender and we find, him almost four years later confined in Attica, never having been convicted of a crime. It is parenthetically noted that, had he not been granted youthful offender 'status, the maximum term of confinement given him could not have exceeded one year.
As to petitioner Irving, his reform record was without blemish, except for the incident which led to his Attica transfer and at that time he was about to proceed with his further education *489 in a public high school outside the Albion confines which progress has now unfortunately gone for naught.
Instead of reforming petitioners, what respondents have done could well result in their emerging from Attica ‘1 well tutored in the ways of crime.” (Matter of Ellery C., 32 N Y 2d 588, 591.)
The hearing covered the better part of three days and testimony was taken from petitioners and four other witnesses with two of them being officials from Albion and one from Attica.
From all the proof offered, I find that Attica, insofar as the confinement of petitioners is concerned, has failed to give them the type of moral guidance, educational opportunities and vocational training mandated by article 75 of the Penal Law and that their transfer to Attica was a void administrative act which constitutes a deprivation of due process. (People ex rel. Saia v. Martin, supra.)
The other question presented for review relates to the procedures pursued by respondents in transferring petitioners from Albion to Attica.
Petitioner Irving had been granted a furlough from Albion which allowed him to travel and spend some time at his home in Buffalo. On the day he was due to return he had some difficulty securing the necessary bus fare and by the time he had done so the last bus had departed for Albion. Irving immediately contacted the Albion authorities and told them of his plight. He was advised to report to a designated Buffalo police Station and remain there until picked up by Albion personnel. Irving followed those instructions and by the time he was transported back to Albion he was some eight hours beyond his furlough expiration time.
■ For this transgression an adjustment committee hearing was held at Albion where Irving was not represented by counsel or anyone else for that matter, no witnesses were formally presented, he was given no right to produce witnesses on his behalf and no opportunity to examine or cross-examine any individuals whatsoever. There were no minutes taken or transcribed relative to that hearing.
The adjustment committee recommended that Irving be transferred to maximum • security at Attica and he was removed from Albion that same day.
The present record is anything but clear as to how such transfer was effected.
The power to transfer is given to respondent Preiser by statute (Correction Law, § 23).
*490 The time sequence here, however, is disturbing. It is difficult to know what, if anything, Preiser received before ordering such transfer and the mechanics involved are deficient, to say the least.
The transfer occurred so quickly that clearly Preiser had no time to review the adjustment committee recommendations or the background that led to such determination, and the proof by respondents indicates this was accomplished by telephone. The conclusion is inescapable that at the time of the transfer there was no written order to that effect from Preiser but nevertheless and on the same day, Irving was transported to Attica and his maximum security incarceration there.
To point up the dispatch with which the Irving matter was disposed of, the hearing developed the fact that Irving was due back at Albion at 7:30 p.m. on June 21, 1973. The Albion authorities transported him back there the following morning, June 22, and the adjustment hearing and transfer of Irving to Attica were all accomplished and concluded on that day.
The Wehling situation is comparable in many respects. That petitioner had been granted a weekend furlough from Albion from which he timely returned on June 11, 1973. He was required to submit to a urine analysis and he did so under protest after his request for representation 'by counsel was denied. "
The results of that test allegedly indicated the use of narcotic, drugs and based upon same an adjustment committee hearing was held at Albion on June 22,1973.
This petitioner was given no prior notice of such hearing and was served with no formal written charge in relation thereto.
Wehling’s repeated request for the aid and assistance of counsel was denied even though the claimed offense against him would amount to criminal activity and indicate the commission of a crime.
Petitioner was given no opportunity to testify or present evidence and witnesses on his behalf. He denies any use of drugs but was not able to question the test results or cross-examjne opposing witnesses. He claims there was confusion between himself and another inmate and error in ascribing to him the test results of another.
There were no minutes of that hearing and there is no transcript of such proceeding for review.
Like Irving, on the same day as the hearing and at the conclusion thereof, Wehling was served with a “ Notice to Inmate which advised him of his transfer to Attica which was immediately effected.
*491 The establishment of adjustment committee and the dispositions and actions to be taken by such body are provided for by rule (7 NYCRR Part 252 et seq.). “ The objective of adjustment committee action shall be to secure the inmate’s understanding of and adherence to the department’s rules and policies governing inmate behavior.” (7 NYCRR 252.5 [a].)
Such committee has the power in keeping with the above stated objective to impose one or more definite and stated restrictions (7 NYCRR 252.5 [e]).
Such restrictions must be narrowly construed but even by affording respondents the broadest possible interpretation of such section there is no authorization whatsoever for committee action which resulted in the transfer of these petitioners to Attica and maximum security. “ The committee * * * shall not direct the action it takes toward the objective of imposing punishment for a violation.” (7 NYCRR 252.5 [b].)
The hearing before this court affirmatively developed that contrary to such mandate the committee was punishing petitioners and using them as a warning and example to other inmates. This they could not do.
Since the committee action must be reversed because of its taint of error and jurisdictional impermissibility, I do not reach or decide whether such adjustment committee hearings had to afford petitioners the basic requirements of due process.
In so stating, I do not mean to indicate that petitioners were not entitled to all due process considerations, nor is it intended to indicate that when inmate punishment seems required there is nothing more than an adjustment committee can do in this regard.
On the contrary, there is another rule that clearly provides for further action. ‘ ‘ Where the committee is of the opinion that a procedure involving formal findings and punitive sanctions is necessary, the committee shall recommend to the superintendent that a superintendent’s proceeding be held.” (7 NYCRR 252.6).
The superintendent’s proceeding at least oh the surface provides for some procedural due process and additional sanctions (7 NYCRR Part 253 et seq.).
It is clear that the adjustment committee did not recommend a superintendent’s proceeding for these petitioners and none was held.
Petitioners are to be immediately removed from the Attica Correctional Facility and remanded to the Albion Community Preparation Center for rehabilitation training in accordance with their original sentences as set forth herein.
*492 The adjustment committee decisions of June 22, 1973 and the actions of respondent Preiser thereon are reversed as to each petitioner, and such proceedings shall be expunged from their respective records, while the subject matter of such hearings is remanded for further action as to which respondents may be advised in conformance with this decision.