OPINION OF THE COURT
Paul I. Miles, J.
This proceeding was commenced by a petition under CPLR article 78. The petitioner claims that although his application for temporary release under the provisions of the New York State Correction Law had been approved prior to August, 1977 and he had participated in such program prior to such date, his continuation in the program after August, 1977 was refused. The petitioner claims that this was a substantial violation of his rights and that he should therefore be immediately reinstated in the program.
The New York State Correction Law (§ 851 et seq.) established in 1969 a temporary release program whereby inmates of the correctional facilities eligible for parole within one year might apply to the temporary release program to be reintegrated into society. The program consisted of work release, home visits, educational release and other comparable pro *915 grams. In July of 1977, the statute was amended to provide that applicants convicted of certain serious crimes would not be permitted to participate in the program without the written approval of the Commissioner of Correctional Services. (Correction Law, § 851, subd 2, as amd by L 1977, ch 691.)
The petitioner was incarcerated in 1975 upon a conviction of arson in the second degree. In January of 1977 the petitioner applied for and received approval for his participation in the temporary release program. That approval was granted by the temporary release committee, by the Superintendent of the Albion Correctional Facility and by a Deputy Commissioner of Correctional Services in Albany. Since the approval of his participation in the program, it is alleged that the petitioner participated in three family-tie furloughs outside of the Albion Correctional Facility, eight religious furloughs and seven Alcoholics Anonymous (AA) furloughs. In this regard it is noted that the original approval of the deputy commissioner was conditioned upon the petitioner remaining in AA. There is no indication that the petitioner was involved in problems or difficulties during the release programs nor were there any disciplinary problems in the Albion Correctional Facility. However, in September of 1977 the petitioner was removed from the temporary release program without hearing. A notice of removal from the program stated as reasons: (1) Nature of instant offense; (2) Pattern of criminal involvement; (3) Lack of significant participation in program — AA. The petitioner claims that he was not afforded a hearing at which time he could answer these reasons or assert his position.
It has been held that there is a right or expectation rooted in State law which entitled this petitioner to this liberty or property interest and that denial of this liberty or property interest constituted a grievous loss to the petitioner. (Tracy v Salamack, 440 F Supp 930, citing Morrissey v Brewer, 408 US 471; Meachum v Fano, 427 US 215; Montanye v Haymes, 427 US 236; United States ex rel. Bey v Connecticut State Bd. of Parole, 443 F2d 1079; and Zurak v Regan, 550 F2d 86.) Federal District Judge Lasker, in the Tracy decision found that a reasonable person, once accepted in the temporary release program, would expect to be allowed to continue in the program unless by his own conduct he gave cause for removal. As a result, the Federal District Court, in that proceeding, found that the revocation of the participation in the temporary release program constituted a grievous loss in regard to *916 an entitlement and that the same should not occur without an appropriate due process hearing.
Our petitioner here argues further that the 1977 amendment to the Correction Law was merely one of procedure which asserted approval by the commissioner as merely a procedural step and not one of any substance. This reasoning was apparently in the mind of Judge Lasker in his decision which required that at the due process hearing only those facts should be considered which occurred since the original determination permitting the inmates participation or the discovery by the correctional officials of new relevant facts, which, although they existed at the time of the original decision, were unknown to the correctional people through no fault of their own or through no lack of reasonable diligence on their part.
The United States Court of Appeals, Second Circuit, in reviewing Tracy v Salamack upheld the District Court’s determination that a due process hearing is required, but removed the limitation upon the facts which could be considered at such hearing. The Court of Appeals seems to indicate that the 1977 amendment of the Correction Law was something more than procedural in nature and that the commissioner does have substantive evaluations to make. However, it is clear that the Federal courts require that a hearing be conducted on these matters at the correctional institution as provided in Wolff v McDonnell (418 US 539).
It is clear in the case before me that the petitioner was participating in the temporary release program after his application was approved by the Correctional Department prior to the change in the Correction Law in 1977. It is further clear that no hearing was held on the petitioner’s case and that the termination of his participation in the temporary release program was ordered as a result of a unilateral review of his file. Such a procedure denied the petitioner his constitutional right to due process.
Therefore, it is the order of this court that the petitioner be returned to the temporary release program and that any removal from the program should be as a result of a hearing following the rationale and procedures set forth in Wolff v McDonnell and to consider at such hearing the petitioner’s eligibility for participation in the temporary release program in light of the threat that he presents to the security of the community, his eligibility for parole, his past institutional *917 record, the particular circumstances underlying the violent offense for which he is under sentence and his previous release record. The commissioner should base his determination as a result of such hearing upon a good faith evaluation and its decision, after such hearing, must be accompanied by a written statement of reasons.