*1031 OPINION OF THE COURT
Harold J. Rothwax, J.
The petitioner is an inmate currently confined át the Bay view Correctional Facility in New York County. She has brought this writ of habeas corpus upon the ground that she has been unlawfully deprived of her conditional liberty by a decision of the New York State Board of Parole, issued March 4, 1982, which denied parole and extended petitioner’s minimum period of incarceration by 18 months. The petitioner claims that the board acted unlawfully in that it failed to take into account all of the factors specified in section 259-i of the Executive Law for consideration of parole eligibility and relied exclusively upon the nature of the offense for which petitioner was initially sentenced. The effect of the board’s decision to extend the petitioner’s incarceration for 18 months was to terminate petitioner’s participation in work release and furlough programs, which limit eligibility to those inmates who are eligible for parole within one year. (Correction Law, § 851, subd 2.) Respondent, represented by the Attorney-General, argues that this proceeding is in the nature of mandamus (CPLR art 78), that the board is presumed to have considered all of the factors enumerated in section 259-i of the Executive Law and that as the board has not violated any “positive statutory requirement,” its decision is beyond judicial review. (See Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29; Gagnon v Scarpelli, 411 US 778.)
Generally, an article 78 proceeding is the proper vehicle to review the action of the Parole Board in denying parole (see Matter of Russo u New York State Bd. of Parole, 50 NY2d 69; Matter of Kaufman v Henderson, 64 AD2d 849). However, when the petition raises a colorable claim that the conditions of confinement have deprived the petitioner of a fundamental constitutional right, habeas corpus is an appropriate remedy (Matter of Kaufman v Henderson, supra; see People ex reí. Perrello v Smith, 47 AD2d 106, 108-110).
The court finds that the instant petition raises issues cognizable within both the writ of mandamus (CPLR art 78) and the writ of habeas corpus (CPLR art 70). Specifi *1032 cally, the petitioner argues that in failing to comply with the requirements of section 259-i of the Executive Law in regard to the factors to be considered in evaluating an application for parole, the Parole Board acted arbitrarily and capriciously and in abuse of its discretion (CPLR 7803, subd 3). The petitioner further alleges that the effect of the board’s determination was to terminate her participation in the work release and furlough programs without cause, which constituted a further constraint upon her liberty and deprived her of a statutory privilege without due process of law (cf. People ex rel. Brown v Johnston, 9 NY2d 482, 485). This distinction is not without a difference, which will appear more clearly below.
The history of the petitioner’s confinement may be briefly stated. She was convicted upon a jury verdict on August 22, 1977 for manslaughter in the first degree (Penal Law, § 125.20) and sentenced to an indeterminate term of from 7 years to 22 years, 7 months and 6 days by the Westchester County Court. Her sentence was found excessive and was reduced, upon appeal, to an indeterminate term of from 3 to 15 years (People v Silberstein, 68 AD2d 894). She first appeared before the Parole Board on March 17, 1980. The board extended her minimum period of incarceration for two years, noting that “statutory limitation(s) preclude a longer hold.” The reasons for the extension were “the vicious assaultive nature of the offense” and the “need to continue * * * behavior modification programs * * * counseling and therapy in order * * * [to] develop some stability prior to returning to the street.” In September, 1981 the petitioner was granted temporary release in a work release program (Correction Law, art 26) and employed as an assistant building manager with a realty firm, assigned to a building of 5,000 tenants. She appears to have had an excellent work record. During the same period, the petitioner was assigned to a less restrictive facility (Lincoln Annex), had a number of furloughs to her parents’ home in Yonkers, was in her thirteenth month of psychiatric therapy, and had accumulated 30 credits in engineering with a view to advancing her employment. Petitioner again appeared before the Parole Board on March 4, 1982. In addition to the foregoing information, *1033 the presiding commissioner reviewed the facts underlying the conviction. The crime was apparently brutal. The victim was the petitioner’s estranged boyfriend, who was intoxicated at the time of the crime. The petitioner had no previous record. The commissioner posed the issue as “how much [time] is enough.” He noted that despite petitioner’s satisfactory adjustment, the deceased “has meaningful relations in some cemetery.” It was the commissioner’s opinion that the crime would “not be typically you in the future.” The decision to extend petitioner’s incarceration for 18 months was based upon the “extraordinary serious nature and circumstances of the * * * offense” and took into account the statutory limitation upon the initial extension to two years “in light of the current three to fifteen year structure.” The decision noted “her adequate institutional adjustment and status in work release and * * * recommends her continued retention in [the] temporary release program.” The petitioner was thereupon returned to a more restrictive facility and her temporary release privileges were automatically terminated. (Correction Law, § 851, subd 2; § 852, subd 3.) The Parole Board’s determination was reviewed by the full board on March 18, 1982, and was modified to the extent that the board “recommended) that she participate in a work release program when she again becomes statutorily eligible” (emphasis added).
The Board of Parole is obligated by statute to consider in addition to the nature of the offense, the inmate’s institutional record, work assignments, and prior criminal history, if any. (Executive Law, § 259-i, subd 1, par [a]; subd 2, par [c].) Parole may be granted “if there is a reasonable probability that, if [the] inmate is released, [she] will live and remain at liberty without violating the law, and that [her] release is not incompatible with the welfare of society”. (Executive Law, § 259-i, subd 2, par [c].)
The statute limits judicial review of Parole Board determinations to those instances in which the board failed to act “in accordance with law” (Executive Law, § 259-i, subd 5). If the record before the board supports its determination and the required procedural rules are followed, the court’s power of review is exhausted (People ex rel. Van *1034 Fossen v Dillon, 72 AD2d 166, 168-169). Review for abuse of discretion requires “a showing of irrationality bordering on impropriety” (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77, supra).
A fair examination of the record of the March 4 proceeding shows that the commissioners were apprised of all of the salient facts regarding the petitioner’s good institutional record, excellent work and study history, compliance with previous conditions regarding therapy, absence of a prior record and the nature of the offense. It cannot be said that the board proceeded capriciously upon an erroneous or inadequate factual basis. (Cf. Matter of Canales v Hammock, 105 Misc 2d 71.) Despite the presiding commissioner’s apparent disagreement with the appellate reduction of petitioner’s sentence to from 3 to 15 years, it cannot be said that the board’s findings were motivated by bias or other irrelevant considerations. (Cf. Matter of Di Paolo v New York State Bd. of Parole, NYLJ, Jan. 28, 1982, p 15, col 6.) “ ‘To require the Parole [Board] to act in accordance with judicial expectations, * * * would substantially undermine the [legislative] decision to entrust release determinations to the [Board] and not the courts’” (Matter of Russo v New York State Bd. of Parole, supra, at pp 76-77, citing with approval United States v Addonizio,.442 US 178, 190). The Court of Appeals continued (p 77), “while under our statute a court may initially set an MPI [minimum period of incarceration], the ultimate determination whether to release a convict is for the Parole Board.” Nor can the minimum presently set by the Parole Board (six years, six months) be considered an abuse of discretion as a matter of law, given the nature of the offense (cf. Penal Law, § 70.02, subds 4, 1, par [a]; § 70.00, subd 3, par [b]).
Insofar as the petition states a claim under CPLR 7803 (subd 3), it is dismissed.
The court, however, finds other factors persuasive with regard to the habeas corpus aspect of petitioner’s application. In People ex rel. Brown v Johnston (9 NY2d 482, supra), where an inmate sentenced to Attica Correctional Facility for an indeterminate period of from one day to life challenged his transfer to Dannemora State Hospital, by means of a writ of habeas corpus, the Court of Appeals *1035 reversed the dismissal of the writ with the following observations:
“[A]ny further restraint in excess of that permitted by the judgment or constitutional guarantees should be subject to inquiry. An individual, once validly convicted * * * is not to be divested of all rights * * *
“The State’s right to detain a prisoner is entitled to no greater application than its correlative duty to protect [her] from unlawful and onerous treatment (Ann. 155 A.L.R. 145, 146), mental or physical. ‘[R]elief other than that of absolute discharge’ should be forthcoming” where appropriate pursuant to the writ of habeas corpus (9 NY2d, at p 485).
The question thus presented is whether the Parole Board by extending petitioner’s minimum incarceration by 18 months imposed a “further restraint in excess of that permitted by the judgment or constitutional guarantees” (People ex rel. Brown v Johnston, 9 NY2d 482, 485, supra). Stated otherwise, the preliminary issue is whether petitioner had a constitutionally significant interest in her continued status in the temporary release program. The court finds that petitioner did have such an interest. Unlike the anticipation of parole which is not a constitutionally cognizable interest in the absence of “affirmative * * * promises” that conditional liberty “will be extended to the inmate” absent “prohibitive findings or circumstances” (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 74, supra), an inmate enrolled in the temporary release program has obtained a degree of conditional liberty based upon her prospects of rehabilitation (Correction Law, § 855, subd 4), which permits gainful employment, association with family and friends on furlough, education and training opportunities and access to specialized medical treatment (Correction Law, § 851, subds 9, 3-8). The petitioner’s status in the temporary release program thus “includes many of the core values of unqualified liberty and its termination inflicts a ‘grievous loss’ on the [petitioner] * * * and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal” (Morrissey v Brewer, 408 US 471, 482; see, also, Tracy v Salamack, *1036 440 F Supp 930, 933-934, mod on other grounds 572 F2d 393, 395-396). Moreover, despite the statutory qualification that “participation in a temporary release program shall be a privilege” (Correction Law, § 855, subd 9), the statutory scheme creates a reasonable expectation that an inmate will continue in the work release program absent a violation of the conditions of participation (Tracy v Salamack, 440 F Supp 930, 934-936, mod on other grounds 572 F2d 393, 396, n 10, supra; see, also, Morrissey v Brewer, supra; Goldberg v Kelly, 397 US 254, 262; cf. Greenholtz v Nebraska Penal Inmates, 442 US 1, 12).
The question remains what process is due with regard to the termination of an inmate’s temporary release eligibility by action of the Parole Board in extending the inmate’s minimum period of incarceration (Morrissey v Brewer, supra, p 483; Correction Law, § 855, subd 9; § 851, subd 2). “[D]ue process is flexible and calls for such procedural protections as the particular situation demands * * * [and] ‘must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action’ ” (Morrissey v Brewer, 408 US, at p 481). There is no question that the State has an overriding interest in continuing an inmate’s period of incarceration for such time as is necessary to achieve the purposes of punishment as well as rehabilitation, and that such discretion is vested in the Parole Board subject only to judicial review for abuse of discretion (Matter of Russo v New York State Bd. of Parole, supra). However, the temporary release program is designed to further the rehabilitative, rather than the punitive, aspect of incarceration and to facilitate the inmate’s transition back to society, thereby encouraging a successful parole (Correction Law, § 855, subd 4; cf. Morrissey v Brewer, supra, at pp 483-484). The revocation of temporary release for reasons unrelated to the inmate’s record of participation therein can only “discourage inmates from co-operating in their rehabilitation” (see People ex rel. Brown v Johnston, 9 NY2d 482, 485, supra). Moreover, the Parole Board in determining whether to grant parole or continue the period of incarceration is statutorily obligated to consider the inmate’s institutional *1037 record including training and work assignments and participation in furlough, family ties and prospects upon release (Executive Law, § 259-i, subd 2, par [c]). Therefore, to require the Parole Board to take into account the impact of its decision upon the inmate’s continued eligibility for temporary release in determining the length of continued minimum incarceration will not be “administratively intolerable” (Morrissey v Brewer, 408 US, at p 483; see Tracy v Salamack, supra). To the extent that continued temporary release is discretionary with the Parole Board (Correction Law, § 855, subd 9), the discretion must be exercised in a constitutional manner (see MacCowan v Cummings, 99 Misc 2d 914). Due process requires, at a minimum, notice of the possible curtailment of liberty, an opportunity for the person affected to be heard prior to the curtailment, and a written statement of reasons for the curtailment sufficiently specific to be subject to judicial review for arbitrariness or abuse of discretion. (Cf. Morrissey v Brewer, supra, at pp 487, 489; Goldberg v Kelly, 397 US 254, 267-268, 271, supra; Wolff v McDonnell, 418 US 539; Tracy v Salamack, supra; Matter of Morales v Ward, 89 Misc 2d 651.)
The court, accordingly, holds that where the Parole Board extends the parole eligibility date of an inmate enrolled in a temporary release program at the time of decision beyond one year, thereby rendering the inmate ineligible for continued participation in the program, the board shall set forth as part of its decision the reasons for the extension in excess of one year. Moreover, the board must take into consideration the inmate’s history of participation in temporary release programs in its determination to extend parole eligibility of currently enrolled inmates beyond one year. Absent factors which justify the extended period of incarceration without the possibility of parole, such as institutional misconduct or failure to abide by the conditions previously set by the Parole Board, or which would justify the removal of an inmate from temporary release privileges, such as the abuse of privileges or the existence of a security risk, the board may not extend the enrolled inmate’s parole eligibility beyond one year (see Matter of Morales v Ward, supra, at p 653). The serious *1038 nature of the initial offense is not, standing alone, a sufficient basis for the termination of temporary release privileges (cf. Matter of Horton v Hongisto, 70 AD2d 1040, 1041).
In the instant case, the testimony during the March 4, 1982 release hearing showed that petitioner had in all respects complied with the conditions previously set by the March 17, 1980 board, regarding institutional adjustment and psychiatric therapy, and, in addition, the petitioner had in all respects complied with the conditions of work and furlough release (see Correction Law, §§ 856, 855, subd 6). Findings to this effect are implicit in the March 4,1982 board’s decision and recommendation that petitioner be continued in the temporary release program. These findings were, in effect, affirmed in the March 18,1982 review by the full board, which recommended the restoration to temporary release privileges when petitioner again became eligible. The only basis stated in the March 4 decision and the March 18 affirmation for extending the petitioner’s period of incarceration without parole eligibility for 18 months was the nature of the original offense. No reason was given in either decision for the necessity of extending petitioner’s parole eligibility date for six months beyond the temporary release eligibility period (Correction Law, § 851, subd 2), or for terminating petitioner’s temporary release privileges. The court finds that the Parole Board failed to adequately consider the petitioner’s constitutionally significant interest in continued temporary release eligibility when it extended her incarceration for 18 months. To the extent that the full board reviewed the impact of the 18-month extension upon petitioner’s temporary release privileges, the court finds that the board’s determination to effectively suspend those privileges for six months had no basis in the record before them and that no adequate statement of reasons was given for the board’s action.
The writ of habeas corpus is, therefore, granted to the extent of reducing the petitioner’s next parole eligibility date by six months, to March, 1983, and the Department of Correction is directed to restore the petitioner’s temporary release status (Correction Law, § 852, subd 3), in the *1039 absence of any intervening events unrelated to the Parole Board’s determination which would justify the removal of her temporary release privileges (Correction Law, § 856).