Argued September 4, 1975, reversed and remanded with instructions
January 29, 1976

# STEPHEN BEKINS, *Petitioner,*
## *v.*
# CUPP, *Respondent.*

545 P2d 861

*Don S. Dana,* Salem, argued the cause and filed a brief for petitioner.

*Scott McAlister,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

DENECKE, J.

**DENECKE, J.**

The petitioner brought this habeas corpus proceeding to secure judicial review of the action of the Oregon State Penitentiary placing him in segregation and isolation on two occasions. The circuit court dismissed his petition and the Court of Appeals affirmed. 21 Or App 16, 533 P2d 817 (1975). We granted review.

We raised the question with counsel whether habeas corpus was the proper procedure to question the constitutionality of treatment accorded prisoners. We previously observed that a growing number of jurisdictions are permitting the use of habeas corpus for that purpose, but we did not pass upon the question. *Grenfell v. Gladden,* 241 Or 190, 192, 405 P2d 532 (1965). The Court of Appeals decided habeas corpus is available. *Newton v. Cupp,* 3 Or App 434, 474 P2d 532 (1970). It has continued to permit the use of habeas corpus and apparently encountered no problems. We hold habeas corpus is a proper procedure.[1]

There was no testimony in the present case. The parties stipulated that a knife, handcuff key and LSD were found in petitioner's cell. He received some sort of notice of this charged violation. He was placed in isolation without a hearing and remained there 60 days. About two months later petitioner was thought

---

[1]One reason advanced by the court in *Newton v. Cupp,* supra (3 Or App at 439), for permitting the use of habeas corpus was: "Ordinary civil remedies for the protection of petitioner's constitutional rights are not available to one imprisoned upon conviction of a felony. ORS 137.240." Counsel for respondent called to our attention that ORS 137.240, the "civil death" statute, was repealed effective at a date after oral argument. Oregon Laws 1975, ch 781, § 10. This may have some effect in the future upon the availability of habeas corpus in this type of case. ORS 138.540 must also be taken into consideration.

ORS 421.195 provides that the Court of Appeals shall review certain orders of the penitentiary. *Chochreck v. Cupp,* 23 Or App 221, 541 P2d 495 (1975), held the order involved was reviewable by the Court of Appeals pursuant to this section and habeas corpus to the circuit court was not available. *Chochreck* does not require a review by the Court of Appeals in this case. Here, as contrasted to *Chochreck,* there was no hearing and no record to review. The facts must be developed in a hearing before the circuit court.

to be involved in the stabbing of another inmate. It was stipulated there would be a conflict in the testimony whether he was notified of this possible violation. Petitioner was not given a hearing. He was placed in segregation and isolation for about 30 days.

The determination to place petitioner in segregation and isolation was made by the assistant superintendent, reviewed by the superintendent and rereviewed by the Director of the Corrections Division.

In both instances a state police investigation was made while the petitioner was in isolation. However, no charges were made against the petitioner as a result of these investigations.

Petitioner's attorney further stipulated, not to the fact, but to the effect that if a witness for respondent were called he would testify that petitioner was not in segregation and isolation for a breach of discipline, but was placed there pending the investigation of the several incidents and because he was considered to be a threat to the security of the prison. There is a difference between being in isolation and segregation in an investigative status and as a result of disciplinary proceedings. In the former, the inmate has full visiting privileges and "some more canteen items."

Petitioner charges his rights under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution were violated. He contends he was entitled to notice of why he was being accorded special treatment, a hearing, an opportunity to present a defense, and a written statement by the factfinder of the evidence relied upon and the reasons for the action. These are the same rights an inmate is provided when he is subjected to disciplinary action. ORS 421.180 et seq. and *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed2d 935 (1974).

The question posed is whether the petitioner is entitled to these rights when he is held apart from the other prisoners for purposes of investigation and when

he is believed to be a threat to the security of the prison. The Court of Appeals decided that petitioner was not entitled to any of these rights. We conclude he is entitled to some rights.

We base our conclusion on the general principles announced in *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed2d 484 (1972) (parole revocation); *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed2d 656 (1973) (probation revocation); and *Wolff v. McDonnell,* supra (418 US 539) (prison discipline).

The essence of the decision in *Morrissey v. Brewer,* supra (408 US 471), is that when a person may be subjected to a "grievous loss" because of governmental action, he or she is entitled to some measure of due process in the determination of whether the loss should be inflicted. What measure of due process must be accorded depends upon the " 'government function involved as well as of the private interest that has been affected by governmental action.' " 408 US at 481. A parolee subject to parole revocation or a probationer subject to probation violation is not entitled to all the rights of due process to which a person charged with a crime is entitled.

In *Wolff v. McDonnell,* supra (418 US 539), the Court held the state's cancellation of "good time" accumulated by the prisoner was the infliction of a grievous loss. In a footnote the majority stated that solitary confinement for disciplinary reasons would be treated the same as deprivation of good time. 418 US at 571, n 19. The loss suffered, however, by a deprivation of good time or solitary confinement is not as grievous as that suffered by parole or probation revocation; therefore, a disciplined prisoner is not entitled to the same quantum of due process.

While the conditions are somewhat more benign, when a prisoner is put in solitary pending investigation rather than for discipline, he suffers substantially the same loss; that is, he is removed from contact with

the prison population and the use of available prison facilities. The measure of due process to which the petitioner is entitled depends upon our assessment of the governmental function involved. The governmental function involved in imposing disciplinary confinements primarily is the preserving of order in the prison. The function of placing a prisoner in segregation and isolation pending an investigation is also preserving order. The prisoner is specially confined pending investigation because if the prisoner did what he is suspected of doing he is a threat to order in the prison.

■ There is a difference, however, between the process of putting one in isolation for breach of discipline and for an investigation. Normally, the special confinement for disciplinary reasons will be substantially longer than for investigation. (That may not be true in the present case.) More importantly, prison officials should have the power to specially confine persons pending investigation if they reasonably suspect these persons present a threat to the order of the institution. In disciplinary cases, however, the hearing body cannot specially confine unless it finds the prisoner did commit the offense, not that it reasonably suspects he did.

Do these differences between special confinement for disciplinary reasons and pending investigation warrant a difference in the amount of due process accorded the prisoner? We conclude they do.

■ We hold that before a prisoner can be placed in segregation and isolation pending an investigation, a supervisory official of the institution must make a finding that he reasonably suspects that the prisoner would constitute a threat to the security of the institution if he were not placed in isolation and segregation pending the investigation. The finding must be supported by information which must be stated in a writing. The decision to place in solitary confinement should be made by someone who would be considered relatively impartial. *Wolff v. McDonnell,* supra (418

US at 571). For example, if the information upon which the decision is to be made to place in solitary confinement is provided by a supervising prison official, if reasonably possible, that official should not make the decision whether to place the prisoner in solitary confinement. The prisoner shall be advised in writing of the reasons he is being specially confined.

These procedures are applicable to two classes of inmates in addition to those placed in segregation pending investigation: Inmates who are not suspected of having committed any offense but who are suspected of contemplating activity which would be a threat to the security of the prison; and inmates whose personal safety is believed to be in jeopardy if they remain a part of the general prison population. Some of this latter class may voluntarily consent to being placed in special confinement, in which case these procedures are unnecessary; others, however, may not.

Our decision is restricted to prisoners being placed in solitary confinement. It does not apply to making lesser changes in the conditions of confinement. The majority made this distinction in *Wolff v. McDonnell,* supra (418 US at 571, n 19): "We do not suggest, however, that the procedures required by today's decision for the deprivation of good time [or solitary confinement for disciplinary purposes] would also be required for the imposition of lesser penalties such as the loss of privileges."

■ If the special confinement is for a short time we do not consider it such a grievous loss as to require a written statement of the reasons for confinement. We do not attempt precisely to define a "short time." ORS 421.195 provides that if an inmate is put in segregation or isolation for more than seven days his treatment is subject to judicial review. Under usual circumstances a period of seven days or less would appear to be a "short time."

■ The information supporting the placing in segregation will frequently consist of a statement by prison

employees of what they observed or were told. *Wolff v. McDonnell,* supra (418 US at 566-569), held that in disciplinary hearings the rules of evidence for criminal prosecutions are not applicable. They also are not applicable in the procedure we are requiring. For example, a statement to a guard by an unidentified, but reliable, informant could be sufficient.

In some instances the statement may be by a supervisory prison official of events which in themselves are insufficient, but when taken together in the current prison atmosphere are sufficient to constitute a reasonable suspicion justifying segregation. We are trying to prevent arbitrary segregation and the appearance of arbitrary action by requiring a written statement to be made justifying the segregation.

■ The specificity of the information upon which a finding is made can vary. The Court in *Wolff v. McDonnell,* supra (418 US at 566), held that the right of the accused inmate to present evidence at his disciplinary hearing must be flexible. The reason was that the right to put on evidence had the potential for disruption of the prison. Likewise, in the present type of proceeding a flexible standard must be used. The information should be as specific as possible consistent with the security of the prison and the safety of the inmates. For example, in the present case the information upon which the decision was made to place the petitioner in solitary confinement in one instance was that a knife, handcuff key and LSD were found in petitioner's cell. It would appear that the security of the prison or its inmates would not have been jeopardized if this information had been reduced to writing and placed before the official deciding whether the petitioner should be placed in solitary confinement. On the other hand, there could be circumstances in which the prison decided to place an inmate in solitary confinement because of fear for the inmate's safety. An official could reasonably believe that making a written statement specifying why he feared for the

inmate's safety would jeopardize an investigation. Under these circumstances it would be sufficient if the written information were to the effect that the writer believed the inmate's safety was imperiled and that to further elaborate would hinder the investigation.

■ We have used the term "reasonable suspicion" to describe the requisite state of mind required to place a prisoner in segregation for nondisciplinary reasons. We are intentionally using a term without a precise meaning. We do so to grant prison officials wide latitude. They should be given wide latitude because failing to be able to place a prisoner in segregation could jeopardize the lives of many.

The suspicion must be reasonable. This means that the information upon which the prison action is based must be such that a reasonable, experienced prison official would suspect therefrom that the security of the institution was threatened.

In the parole and probation revocation cases the United States Supreme Court required a finding of probable cause before a suspected violator could be jailed pending a hearing on parole or probation revocation. *Morrissey v. Brewer,* supra (408 US 471), and *Gagnon v. Scarpelli,* supra (411 US 778). We are of the opinion that this is too stringent a requirement to be met in order to place a prisoner in segregation for nondisciplinary reasons. As we stated, the consequences of an inability to take that action could be disastrous. On the other hand, the principal reason for confinement pending a parole or probation revocation hearing is to insure that the person is available for the hearing.

■ We do not believe it is constitutionally necessary to have a hearing or permit the prisoner to present evidence favorable to his cause. This was required in the preliminary hearings required in the cases of parole and probation revocation and in the disciplinary procedure for prisoners.

■ We are influenced by the analogy of the procedure

of the grand jury. A grand jury does not need to call the person whose conduct is being investigated. On occasion the suspect does not know the grand jury is conducting an investigation. When the grand jury makes a decision that there is probable cause to believe a suspect has committed a crime and issues a true bill, the suspect is arrested. The arrested defendant, unless released, remains in custody until some disposition is made of the charge, by trial or otherwise.

The grand jury might be considered a more neutral arbitrator than a prison supervisory official. But we consider this more than balanced by the fact that the loss of one jailed under an indictment is more grievous than that of a prisoner placed in segregation and isolation.

A grand jury can only indict a person "when all the evidence before it, taken together, is such as in its judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." ORS 132.390. This is a more demanding requirement than reasonable suspicion; however, the consequences of failing to segregate can be so much more drastic.

We hold a notification to the prisoner of the reason for his special confinement is necessary. Usually, notice is required to enable the party to be present at the hearing and present a case. That cannot be the purpose in this instance. We are of the opinion, however, that our constitutional tradition will not countenance the practice of confinement or isolated confinement without a notification of the reason for confinement.

The specificity of the notice can vary as the specificity of the information upon which the confinement is based can vary. If the supervisory prison official making the decision believes that making the notice too explicit will hamper an investigation or increase the threat to the security of the prison or to an inmate, the notice can be in more general terms.

■ We are requiring that the information upon which the official acts to be in writing and, of course, preserved. This is for the scrutiny of higher officials or the courts to insure that there were grounds for reasonable suspicion.[2]

Reversed and remanded with instructions to remand to the circuit court.

[2]The federal courts have imposed a variety of requirements before a prisoner can be placed in nondisciplinary segregation and isolation. *Biagiarelli v. Sielaff,* 483 F2d 508, 512 (3d Cir 1973):

"Biagiarelli was only entitled to either written notice of the basis for his removal from the prison population and an opportunity to rebut the charge, or a hearing. When the notice reasonably should have been given, or the hearing held, depended on when the threat to the institution subsided, regardless of whether he was held in punitive or administrative segregation. * * *."

The court held in *Bowers v. Smith,* 353 F Supp 1339 (D Vt 1972), that a prisoner to be placed in segregation because he was believed to be a security risk was entitled to a hearing, including an opportunity to call witnesses and cross-examine adverse witnesses.

In *Urbano v. McCorkle,* 334 F Supp 161, 168 (D NJ 1971), the court held that before a prisoner could be confined to segregation, whether disciplinary or administrative, he had a right to be notified of charges and nature of evidence and given a chance to rebut the evidence.

The temporary rules for Procedures for Disciplinary Action adopted by the Oregon Corrections Division on April 7, 1974, provide:

"Inmates who commit rule violations of such seriousness that the good order and security of the institution require immediate segregation of the offender shall be placed in holding status pending a hearing. Such segregation may occur only with the consent of a designated staff member. [Holding status may include segregation and isolation.] Rule 4a.

Model Rules and Regulations on Prisoners' Rights and Responsibilities prepared by Professor Krantz and others provide:

"A line officer bringing a complaint against an inmate who believes that the inmate should be placed in detention prior to the hearing must immediately seek approval from his superior officer. The superior officer or a higher ranking correctional officer are the only persons who may approve detention before a hearing. Notice of the detention must be sent to the superintendent of the institution who must approve the detention action within twenty-four hours after it has begun. The superior officer and the superintendent shall not approve detention before a hearing unless they determine that the inmate constitutes an immediate threat to institutional order or the safety of particular inmates. Inmates shall not be held in prehearing detention longer than three days, the permissible period before a hearing is required to be held except when the accused requests the automatic three-day continuance (See Rule V-3) or in an emergency situation (Rule V-11) which may make longer detention necessary." Rule V-2b., pp 157-158.