Submitted on record and briefs May 6, affirmed May 23, 1977

MARK DAVID TAYLOR, *Appellant,*
*v.*
CUPP, *Respondent.*
(No. 96357, CA 7338)
564 P2d 746

R. Michael Healey, and Bell, Bell & Rounsefell, Stayton, filed the brief for appellant.

James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and W. Benny Won, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

PER CURIAM.

**PER CURIAM.**

In this habeas corpus proceeding plaintiff, an inmate of Oregon State Penitentiary, contends that the trial court erred (1) in finding that the policies of the penitentiary governing possession of publications by inmates were reasonable and necessary, and (2) in finding that confiscation and removal by prison authorities of certain of the plaintiff's religious publications from his cell did not deny him his constitutional right of free exercise of religion. The state's brief accurately answers plaintiff's contentions and we quote:

"Petitioner, an inmate at the Oregon State Penitentiary (OSP), contends on appeal that the confiscation of 22 of his religious books and publications pursuant to Section VIII.B.10.[1] of the Segregation and Isolation Unit's regulations, which limits the amount of reading material which an inmate may have in his cell, operated to deny him his constitutional right to the free exercise of religion.

"Prisoners' constitutional rights 'may be diminished by the needs and exigencies of the institutional environment.' *Wolff v. McDonnell,* 418 US 539, 555, 94 S Ct 2963, 41 L Ed2d 935 (1974). A prison regulation which infringes upon First Amendment rights, such as the freedom of religion, is sufficiently justified if it furthers an important or substantial government interest unrelated to the right limited and the incidental restriction is

---

[1] Section VIII.B.10. of the Segregation and Isolation Unit's regulations provides:

"Reading Material—It shall be the responsibility of the S & I Property Officer Second Watch, to keep on hand a supply of books obtained from the Library which shall be distributed among inmates. Arrangements should be made with the librarian when the exchange of books is necessary. The S & I Property Officer will be strictly responsible for searching all books and magazines entering or leaving the Unit and must be especially careful to inspect the bindings. The S & I Property Officer is cautioned to be on the alert for codes or marked passages. An inmate housed in the S & I Unit will be permitted to have two library books. These shall be in excess of the necessary school or legal books, two magazines, or two newspapers, or one of each, which he may have in his cell at any one time. The Property Officer will issue the books making certain that he picks up in exchange any books the inmate possesses at that time."

no greater than is necessary to the furtherance of that interest. *Procunier v. Martinez,* 416 US 396, 413, 94 S Ct 1800, 40 L Ed 2d 224 (1974). With respect to the latter criterion, correctional authorities must be accorded latitude in anticipating the probable consequences in the absence of the regulation. *See id: Cruz v. Beto,* 405 US 319, 321, 92 S Ct 1079, 31 L Ed2d 263 (1972).

" '[T]hose officials are responsible for maintaining order and protecting the lives of penitentiary employees and inmates.' *Newton v. Cupp,* 3 Or App 434, 441, 474 P2d 532 (1970). Inmates housed in the Segregation and Isolation Unit (S & I) generally have been placed there for disciplinary reasons. * * * *See also, Bekins v. Cupp,* 274 Or 115, 120, 545 P2d 861 (1976). Petitioner had been placed in special confinement for assault and disrespect.

"Section VIII.B.10. of the S & I Unit's regulations provides that an inmate may not have more than four (4) books or publications, not including necessary legal or school-related books, in his cell. However, an inmate may obtain new reading material by exchanging a publication in his possession for one issued by the S & I Property Officer at the former's request. * * * Thus, in the present case, petitioner was not permanently deprived of his religious books and publications; he was merely prohibited from having more than a certain quantity in his cell at any one time * * *.

"The restriction on the amount of reading material which an inmate may have in his cell is based primarily upon considerations of prison security, inasmuch as contraband, such as weapons, tools, and drugs, can be concealed in books, magazines, and newspapers. * * * *See Walker v. Pate,* 356 F2d 502 (7th Cir 1966), *cert denied* 384 US 966 [1966]. Correctional authorities may place reasonable limitations on the amount of reading material an inmate may have in his cell, in order to permit manageable and effective security searches and inspections, which must be conducted periodically by the prison staff. * * * *Cf. Brown v. Peyton,* 437 F2d 1228, 1231 (4th Cir 1971). *See also,* ORS 137.285. The provisions of Section VIII.B.10. represent a necessary and reasonable balancing of the security requirements in the S & I Unit and the inmates' rights. *See Walker v. Pate,* supra; *Carey v. Settle,* 351 F2d 483 (8th Cir 1965). Thus, the confiscation of 22 of petitioner's religious books and

publications pursuant to Section VIII.B.10. of the S & I Unit's regulations did not operate to deny him his constitutional right to the free exercise of religion."

Affirmed.