Argued in Portland March 10, affirmed July 5, 1978

DONALD PENROD, *Petitioner,*
*v.*
CUPP, *Respondent.*
(TC 96355, CA 7282, SC 25615)

ROBERT E. BROWN, *Petitioner,*
*v.*
CUPP, *Respondent.*
(TC 98593, CA 8561, SC 25616)
581 P2d 934

R. Michael Healey, Stayton, argued the cause for the petitioner in each appeal. With him on the briefs were Bell, Bell & Rounsefell.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. On the brief in Penrod v. Cupp were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and W. Benny Won, Assistant Attorney General.

Stephen Kanter, Portland, Cooperating Attorney for ACLU of Oregon, filed a brief as amicus curiae.

Holman, J., concurring opinion.

**LINDE, J.**

Petitioners, inmates of the Oregon State Penitentiary, appealed to the Court of Appeals from the dismissal by the Marion County Circuit Court of their petitions for writs of habeas corpus, which alleged various deprivations and mistreatment claimed to violate the petitioners' constitutional rights. The Court of Appeals affirmed the dismissals without reaching the merits, accepting defendant's argument that the circuit court "did not have jurisdiction" to decide on the petitions for habeas corpus because the statutory abolition of "civil death" gave convicted prisoners recourse to ordinary judicial remedies.[1] *Penrod v. Cupp,* 30 Or App 371, 567 P2d 563 (1977). We granted review to determine the effect of this statutory change on the writ of habeas corpus.

The use of the writ to scrutinize allegedly illegal treatment of persons lawfully imprisoned began with the decision of the Court of Appeals in *Newton v. Cupp,* 3 Or App 434, 474 P2d 532 (1970), based on the court's review of the relationship between the writ of habeas corpus as codified in ORS 34.310-34.730, the Post-Conviction Hearing Act, ORS 138.510-138.680, and the Oregon Constitution. This court, having previously indicated that the question was open, *Grenfell v. Gladden,* 241 Or 190, 192, 405 P2d 532 (1965), *cert. denied,* 382 US 998 (1966), approved the practice in *Bekins v. Cupp,* 274 Or 115, 545 P2d 861 (1976). A footnote in *Bekins, id.* at 117 n.1, left open the effect of the repeal of the "civil death" statute, ORS 137.240, after that case was argued, thus precipitating the present issue. We conclude that despite the repeal of "civil death" and the enactment of ORS 137.275, see

---

[1] ORS 137.275 provides:

Except as otherwise provided by law, a person convicted of a felony does not suffer civil death or disability, or sustain loss of civil rights or forfeiture of estate or property, but retains all of his rights, political, civil and otherwise, including, but not limited to, the right to vote, to hold, receive and transfer property, to enter into contracts, including contracts of marriage, and to maintain and defend civil actions, suits or proceedings.

note 1 *supra,* the writ of habeas corpus remains available to challenge alleged deprivations of a prisoner's rights under the conditions stated herein.

The writ of habeas corpus, guaranteed by the Oregon Constitution,[2] has from the beginning of statehood been made available in these terms:

> Every person imprisoned or otherwise restrained of his liberty, within this state, . . . may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom.

Act of October 11, 1862, section 597, Oregon General Laws 1862, *codified at* ORS 34.310. The statute also provides that the writ is not available insofar as the imprisonment or restraint is "by virtue of the judgment or decree of a competent tribunal of civil or criminal jurisdiction." ORS 34.330(2). The question is how broadly to read the restraints of a person's liberty whose alleged illegality may be tested by the writ. That being "restrained of his liberty" is not limited to being "imprisoned" appears on the face of the statute. Doubtless the term would include any physical restraint, for instance an allegation that one is illegally kept chained, or in a straitjacket, or blindfolded, though not confined in any closed space. One can be no less restrained by means of the deliberate threat or use of violence to one's person. Upon such an allegation, the issue is not whether the person on whose behalf the petition is filed is "restrained of his liberty" but whether the restraint is illegal.

When the petitioner is a prisoner by virtue of a valid judgment of conviction, this reading nevertheless allows use of the writ to challenge the legality of additional measures of "imprisonment or restraint" in the literal sense beyond the initial restraint by imprisonment in a penal institution itself. In this respect, we agree with the view of the New York Court of Appeals

___

[2] Article I, section 23, of the Oregon Constitution provides:

> The privilege of the writ of *habeas corpus* shall not be suspended unless in case of rebellion, or invasion the public safety require it.—

in *People ex rel Brown v. Johnston,* 9 NY2d 482, 485, 174 NE2d 725, 215 NYS2d 44 (1961), that "any *further* restraint *in excess* of that permitted by the judgment . . . should be subject to inquiry" through habeas corpus. As one recent study of habeas corpus puts it: "If, for example, a prisoner is improperly put in solitary confinement . . . there seems to be no reason why he should not be able to use habeas corpus to be free from that restraint. The situation may be seen as a 'prison within a prison' and the applicant is simply released from the inner prison while being kept within the confines of the outer one." Sharpe, The Law of Habeas Corpus 149 (1976). It was such a claim of illegal segregation and isolation that we held within the reach of the writ in *Bekins v. Cupp, supra.*

This much is plainly consistent with the historic function of the writ in scrutinizing restraints of personal liberty by executive officials, even if it extends it from nineteenth century assumptions to twentieth century conditions of imprisonment. It is also consistent with the legislative assumption in enacting the Post-Conviction Hearing Act that habeas corpus was one remedy available to a convicted person who "asserts the illegality of his restraint upon grounds other than the unlawfulness" of the judgment of conviction itself. ORS 138.540 (2); *see Strong v. Gladden,* 225 Or 345, 348, 358 P2d 520 (1961); *Newton v. Cupp,* 3 Or App at 438-439. In the same act, the legislature took pains to recognize the constitutional right to seek a writ of habeas corpus from this court even in cases covered by the Post-Conviction Hearing Act. ORS 138.530(3); Collins and Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337, 347 (1960).[3] Thus the result of an interpretation excluding petitions to the circuit courts would leave jurisdiction

---

[3]According to the authors, who participated in drafting it, the Post-Conviction Hearing Act recognizes that the exclusion of habeas corpus or its subordination to a less-than-equivalent remedy could be attacked as a "suspension" of the privilege contrary to article I, section 23, of the Oregon Constitution. 39 Or L Rev at 346.

to issue the writ contemplated by ORS 138.540(2) exclusively in the original jurisdiction of this court.

It is more problematic to expand the "restraints of liberty" that may be tested by a writ of habeas corpus to mean every deprivation that qualifies as an invasion of the "liberty" protected by the due process clause of the fourteenth amendment.[4] While such a reading is not impossible, it moves substantially beyond the original understanding. *See Long v. Minto,* 81 Or 281, 158 P 805 (1916). When this extension was nevertheless made in *Newton v. Cupp, supra,* an important reason was that prisoners convicted of a felony were denied the right to pursue other judicial remedies against illegal treatment. Where the deprivation involves a constitutionally protected right, either Oregon's article I, section 10,[5] or the federal fourteenth amendment obliges the state to provide some remedy in due course, or due process, of law; and in the case of persons in official custody who have no other remedy, the writ of habeas corpus remains the constitutionally quaranteed means to invoke judicial aid. This is not the first such adaptation in the long evolution of a writ that, however unhistorically, was taken by a founding generation bred on Coke and Blackstone and seventeenth century English history to embody the ultimate protection of due process of law. *See* Meador, Habeas Corpus and Magna Carta 13-30 (1966).[6] The question

---

[4]Section 1 of the fourteenth amendment, United States Constitution, provides:

No State shall . . . deprive any person of life, liberty, or property, without due process of law; . . .

[5]No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property or reputation.—

*See Newton v. Cupp,* 3 Or App at 439.

[6]The central events were *Darnel's Case,* 3 How St Tr 1 (KB 1627), in which the King's Bench denied the writ to five knights imprisoned "by special order of the King" for refusing to make a forced loan to the Crown, and the subsequent parliamentary debate culminating in the Petition of Right, as well as the Habeas Corpus Act of 1679. The assertion that one claiming to be imprisoned "against the law of the land" could obtain judicial relief by habeas corpus originated in part two of Coke's *Institutes of the Lawes of England* in 1642. *See* Meador *supra* at 22-23.

remains whether it stands and falls with the denial of all other judicial remedies by the former "civil death" statute.

The answer must be found in the nature of the claimed deprivation and the adequacy of the remedy otherwise available. A central characteristic of the writ, the main purpose achieved by the Habeas Corpus Act of 1679, is the speed with which it triggers a judicial inquiry. The asserted deprivations may range from serious claims of present or impending cruel and unusual punishment as in *Bekins* or infringements of religious freedom as in *Newton,* which if valid require urgency, to many other kinds of claims for which another remedy available to prisoners is adequate. For instance, given access to other remedies, habeas corpus normally should not be needed to challenge overcrowding, the quality of prison food, the opportunities for recreation or exercise, or similar conditions of imprisonment even when the challenge has merit. Whether the legal remedies opened to prisoners by ORS 137.275, or administrative remedies that may be developed, will be adequate for any given class of claims cannot be decided in the abstract. Arguably a tort action, if not precluded by rules of immunity or other factors, may sometimes be an adequate remedy for a single assault, but it is not a remedy against a systematic employment of the threat or use of physical abuse. Equity provides the flexible remedy of injunction for conditions found to be contrary to law, and temporary restraining orders, if timely available to petitioners when needed, may obviate the need for habeas corpus where that need rests only on speed. Other forms of effective and speedy independent inquiry outside the courts could be imagined.[7] But it

---

[7]One reason urged for the writ of habeas corpus as the all-purpose challenge to conditions of imprisonment is that, under present practice, the Marion County Circuit Court routinely appoints counsel to represent indigent inmates in habeas corpus proceedings, and that the court may fail to do so in other forms of civil proceedings, although the proper selection and pleading of these remedies involve greater legal intricacies. This is one

goes too far to hold, as the Court of Appeals did, that the mere abolition of "civil death" also abolished all circuit court jurisdiction over petitions for writs of habeas corpus by convicted prisoners.

In summary, we conclude that the writ remains available to bring before a court the two kinds of cases we have described: (1) When a petition makes allegations which, if true, show that the prisoner, though validly in custody, is subjected to a further "imprisonment or restraint" of his person that would be unlawful if not justified to the court, and (2) when a petition alleges other deprivations of a prisoner's legal rights of a kind which, if true, would require immediate judicial scrutiny, if it also appears to the court that no other timely remedy is available to the prisoner. It is neither possible nor proper to list hypothetical claims of this second kind in advance of their arising, but we emphasize the two essential elements that must coincide to make the writ of habeas corpus a proper instrument of judicial inquiry: The need for immediate attention, if this appears from the urgency of the harm to which the prisoner claims to be exposed or if it is found to be required as a matter of constitutional law, and the practical inadequacy of an alternative remedy to meet this need. Of course, it does not follow that upon issuance of the writ the prisoner will in fact be entitled to relief. We hold only that if these two elements appear from the petition, habeas corpus is not unavailable as a matter of law. In such a case, the circuit court will properly dismiss the petition if, but only if, the court identifies another timely remedy that actually is available to petitioner, or when the court finds that the alleged deprivations, even if arguably unlawful, do not require immediate judicial intervention pending resort to the available remedy.

factor that will bear on whether the civil remedies made accessible by ORS 137.275, or a prompt and impartial administrative alternative that might be devised, can effectively provide review of alleged mistreatment. *See* Comment, *Protection of Prisoners' Rights in Oregon: An Analysis of Judicial Remedies and an Alternative Proposal,* 14 Will L J 55, 61 (1977).

■ In the present cases, Penrod's petition alleged that he had been unlawfully placed in segregation and isolation, an allegation of the first kind described above, and also that he had been denied certain reading material and medical care and that he had been repeatedly beaten and threatened by prison personnel. Brown's petition alleged that prison personnel had confiscated a number of his books. The latter are claims for which the writ would not be available unless, for some reason, it appears that they require immediate judicial scrutiny and that no other speedy and adequate remedy is in fact available to the prisoner. The circuit court held evidentiary hearings on both petitions and dismissed them on the merits, and the appeals challenged the court's actions on evidentiary grounds. Since these hearings were held more than fourteen months ago, and the Court of Appeals on its view of the law did not reach the factual issues, we do not think it is useful now to speculate about the present status of the petitioners' assertions on this stale record or to ask the Court of Appeals to do so. Under today's decision, petitioners have the opportunity to present up-to-date claims for appropriate forms of relief if they still have need of them.

Affirmed.

**HOLMAN, J.,** concurring.

Traditionally, habeas corpus was a writ directed to the person detaining another, testing his right to so detain—not a writ testing the conditions of detention. In *Newton v. Cupp,* 3 Or App 434, 474 P2d 532 (1970), the Court of Appeals enlarged upon the use of the writ to include the conditions of imprisonment because "Ordinary civil remedies for the protection of petitioner's constitutional rights are not available to one imprisoned for conviction of a felony." Citing the Oregon "civil death" statute, ORS 137.240, the Court of Appeals further stated that "To hold that habeas corpus is also unavailable would be to leave petitioner in the medieval position of possessing a right for which

[ 29 ]

there exists no remedy." This language was subsequently tacitly approved by this court in *Bekins v. Cupp*, 274 Or 115, 545 P2d 861 (1976). After the filing of the writ in *Bekins* ORS 137.240 was repealed, thus returning the right of inmates to access to the court system.[1]

As I see the issue, it is whether habeas corpus will continue to be available to test the lawfulness of the conditions of imprisonment, as well as the right to imprison, now that the "civil death" statute has been repealed. As I read the majority opinion, it holds that the writ should continue to be available to test the lawfulness of the conditions of imprisonment in situations in which usual procedures are insufficiently swift, taking into consideration the seriousness of the conditions to which the imprisoned person is being subjected.

With his general proposition I have no quarrel. However, in view of the recent history of the abuses of the writ by prisoners and the inability of courts to supply adequate terminal facilities preventing continual and repetitive litigation because of the nature of the writ,[2] it seems unwise to me to make the writ available except in very limited situations in which speed is necessary to examine conditions of imprisonment which are allegedly fraught with serious physical consequences for the inmate, such as solitary confinement without formal disciplinary proceedings being instituted, *Bekins v. Cupp, supra,* as well as situations in which the inmate claims to have been beaten and threatened, is in need of immediate and critical medical attention, or is in any similar, seriously urgent situation in which his immediate physical

---

[1] Repealed by Oregon Laws 1975, ch 781, § 10.

[2] Doub, *The Case Against Modern Federal Habeas Corpus,* 57 ABA J 323 (1971); Lay, *Post Conviction Remedies and the Overburdened Judiciary: Solution Ahead,* 3 Creighton L Rev 5 (1969); Weick, *Apportionment of the Judicial Resources in Criminal Cases: Should Habeas Corpus be Eliminated?,* 21 De Paul L Rev 740 (1972); Santarelli, *Too Much is Enough,* 9 Trial 40 (May-June 1973).

[ 30 ]

welfare is at stake. At least, this should be our rule until forced by the Supreme Court of the United States through the due process clause to include situations that are not fraught with such serious physical consequences.

> "Habeas corpus was intended to be an extraordinary remedy for an extraordinary deprivation. Its abuse is well-documented. The recent extension of the writ to permit challenges to prison conditions and prison discipline, and the imposition of due process requirements on the prison discipline setting, will likely lead to further abuses. Specifically, it is probable that the already sizeable number of frivolous petitions will increase. * * *." (Footnotes omitted.)[3]

> "While general principles of decision-making emphasize finality in the law in order to obtain stability and certainty, the tradition of habeas corpus creates the possibility of litigation ad infinitum. Furthermore, as a consequence of the continuing expansion of the concept of due process, ever-increasing numbers of judgments become subject to the common law prohibition against the use of res judicata. * * *." (Footnotes omitted.)[4]

For all other conditions of imprisonment, not falling within the above limitation, I would leave the prisoner to the more deliberate and usual procedures of ordinary court proceedings with which the general public must cope and which, in my opinion, are sufficiently speedy to vindicate such other conditions. The prisoner has access to the courts to ask for an injunction if he has access to a writ. The immediacy of a writ interrupts all regular court routine and should not be available to test the conditions of incarceration except in situations which are alleged to be fraught with serious physical consequences.

---

[3] Comment, *Habeas Corpus Challenges to Prison Discipline,* 43 Fordham L Rev 963, 969-70 (1975).

[4] Kelley, *Finality and Habeas Corpus: Is the Rule that Res Judicata may not Apply to Habeas Corpus or Motion to Vacate Still Viable?,* 78 W Va L Rev 1, 3-4 (1975).

Under the proper rule, as I visualize it, the petition of the inmate Brown would not qualify for the issuance of a writ because only the possession of some books was in issue. The petition of Penrod would qualify since he alleged repeated beatings and threats by prison personnel.

Tongue and Howell, J.J., join in this concurring opinion.