Argued April 24, affirmed August 1, reconsideration denied
September 12, 1978, petition for review allowed January 16, 1979

DENNIS GORDON, *Petitioner,*
*v.*
OREGON STATE PENITENTIARY, *Respondent.*
(No. 11-77-236, CA 9860)
582 P2d 19

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

PER CURIAM.

Affirmed. *Duncan v. OSCI,* 35 Or App 81, 580 P2d 1047 (1978).

Lee, J., dissenting opinion.

**LEE, J.,** dissenting.

The majority disposes of this case, *per curiam,* by citing *Duncan v. OSCI,* 35 Or App 81, 580 P2d 1047 (1978). In *Duncan* we erroneously avoided consideration of the "proceedings underlying the order" which ORS 421.195 authorizes us to review. I dissent because the Corrections Division has not followed its own rule.[1]

Petitioner was found guilty by a prison disciplinary committee of disobeying an order. The final order of the superintendent placed petitioner in segregation for nine days. Petitioner's primary contention is that the disciplinary committee violated its own rules and due process by holding petitioner in "segregation" for nine days without finding that petitioner constituted a "threat to the security of the institution." *See* OAR 291-40-110(4)(a).

The evidence shows that on November 22, 1977, petitioner was served a bony portion of short ribs which he refused. He then left the line to discuss the situation with the steward. An officer stated in a subsequent disciplinary write-up that when petitioner started back to the food line he ordered petitioner not to return. Petitioner allegedly answered in a disrespectful manner, "Hey dude, you ain't gonna tell me I cannot go back and get what I rate." Petitioner then returned to the line. Later that day, the officer caused a write-up to be delivered to petitioner who was placed in segregation where he remained until November 30, 1977, a period of nine days.

On November 25, 1977, petitioner was brought before the disciplinary committee for a hearing on the incident and he requested that the steward be questioned regarding the matter. The disciplinary commit-

---

[1] ORS 421.180 provides:

"The division shall adopt procedures to be utilized in disciplining persons committed to the physical and legal custody of the division. The procedures adopted shall be subject to the approval of the Governor."

tee chairman, Jacobs, then announced that the hearing would be continued, after which the following colloquy occurred:

> "GORDON: Is there any way that I could get out until this was comin' down, because I have a visit coming down tomorrow.
>
> "JACOBS: Nope.
>
> "GORDON: Well, then, could I just plead guilty to it and find out what happened then?
>
> "JACOBS: No, it's already been decided—we'd continue it at your request—we'll continue it."

The hearing was concluded on November 30, 1977. Meanwhile, despite his objection, petitioner remained in segregation. The steward's report indicated that petitioner did disobey the order but that he did not hear petitioner say anything really disrespectful and that the incident "didn't really cause any disturbance." Petitioner was ordered to serve "nine days' segregation with credit for time served."[2]

Our jurisdiction is defined in ORS 421.195 which states in part:

> "If an order places an inmate in segregation * * * for *more than seven days* * * * the *order* and the *proceedings underlying the order* are subject to review by the Court of Appeals * * *. The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (8) or ORS 183.482. * * *" (Emphasis supplied.)

I would reverse because petitioner was held in segregation for nine days without a finding that the "security of the institution" required his "immediate removal" as required by OAR 291-40-110(4)(a), which provides:

> "(4) Holding Status:
>
> "(a) Inmates who commit rule violations of such seriousness that the good order and *security of the*

---

[2] In *Hale v. OSP,* 33 Or App 529, 532 n 1, 577 P2d 531 (1978) we specifically reserved judgment on the situation where the sanction was coincidentally the same as the time already served. In the instant case, I would hold that the subsequent sanction does not cure the prior error.

*institution requires immediate removal* of the offender shall be placed in holding status pending a disciplinary hearing." (Emphasis supplied.)

This rule was adopted *after* the decision[3] of the Oregon Supreme Court in *Bekins v. Cupp,* 274 Or 115, 120, 545 P2d 861 (1976), in which the Court said:

"We hold that before a prisoner can be placed in segregation and isolation pending an investigation, *a supervisory official of the institution must make a finding that he reasonably suspects that the prisoner would constitute a threat to the security of the institution* if he were not placed in isolation and segregation pending the investigation. The finding must be supported by information which must be stated in a writing. * * *" (Emphasis supplied.)

No finding appears in the record that the security of the institution required petitioner's immediate removal to segregation. Petitioner was in effect being confined in "a prison within a prison" without any finding that he "would constitute a threat to the security of the institution." Since OAR 291-40-110(4)(a) was adopted after *Bekins*[4] and there has been no withdrawal from that holding, the requirement for such a finding is

---

[3]The *Bekins* decision is based on the United States Supreme Court's statement that the minimum requirements of procedural due process must be observed when prisoners face segregation or the loss of good time due to serious misconduct. *Wolff v. McDonnell,* 418 US 539, 554, 94 S Ct 2963, 41 L Ed 2d 935 (1974). The United States Supreme Court has subsequently reiterated that the convicted felon retains a variety of important rights which must be protected—particularly when the state provides the right and specifies that it be forfeited only for serious misbehavior. *Meachum v. Fano,* 427 US 215, 225, 96 S Ct 2532, 49 L Ed 2d 451 (1976).

[4]ORS 421.195 does not make "proceedings underlying the order" subject to review *unless* the prisoner has been held in segregation for "more than seven days." The Oregon Supreme Court was cognizant of that time interval when it said:

"If the special confinement is for a short time we do not consider it such a grievous loss as to require a written statement of the reasons for confinement. We do not attempt precisely to define a 'short time.' *ORS 421.195 provides that if an inmate is put in segregation or isolation for more than seven days his treatment is subject to judicial review. Under unusual circumstances a period of seven days or less would appear to be a 'short time.'*" (Emphasis supplied.) *Bekins v. Cupp, supra* at 121.

necessarily a part of the rule which, in my opinion, was violated.

Accordingly,[5] I respectfully dissent.

---

[5] In *Moore v. OSP,* 16 Or App 536, 519 P2d 389 (1974), we said:

"* * * The elementary proposition that an agency of government must follow its own rules requires no citation of authority."